UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| JARED PRICE | : | CIVIL ACTION NO. 17-01279 |
| | | |
| VERSUS | : | |
| | | |
| QUALITY ENERGY SERVICES, INC, ET AL | : | MAGISTRATE JUDGE KAY (By Consent) |

<u>**MEMORANDUM RULING**</u>

Before the court is a Motion for Summary Judgment filed by defendant Quality Energy Services ("QES") which seeks dismissal of all claims asserted against it by plaintiff. Doc. 88. Plaintiff Jared Price opposes the motion in part. Doc. 94. Quality has filed a reply [doc. 97] and the matter is now ripe for review.

For the following reasons, the Motion for Summary Judgment is **GRANTED**.

**I.**
**BACKGROUND**

Plaintiff's complaint alleges that he was injured while working as a plug and abandon helper on a platform in the Gulf of Mexico when a pipe which was being lifted by a crane swung and hit him causing him to fall to the deck. Doc. 1. The pipe then broke free from the crane and fell onto plaintiff's left leg. *Id.* Plaintiff named his employer, QES, Offshore Marine Contractors, Inc., and W&T Offshore, Inc. as defendants. *Id.* He alleged that his employer QES was liable to him as his Jones Act employer or alternatively under 33 U.S.C. § 905(b). *Id.* He alleged general maritime and state law claims against Offshore Marine and W&T. *Id.* An amended complaint added Greene's Energy Group, LLC, and Industrial Solutions Group, LLC as additional defendants

and alleged general maritime and various state law claims against them.  Doc. 40.  A second amended complaint named Underwriters at Lloyd's London and Joshua Suire, W&T's contracted company representative, as defendants.  Doc. 61.

Plaintiff's employer QES filed this motion for summary judgment and maintains that there are no material facts in dispute and that plaintiff cannot legally be considered a Jones Act seaman. QES further maintains that plaintiff's claims under 33 U.S.C. § 905(b) must likewise fail because he cannot prove that QES committed any vessel-based negligence.  Doc. 88.

In response plaintiff concedes that his § 905(b) claims must fail.[1]  Plaintiff agrees that the facts of this case are not in dispute but maintains that the facts show that he adequately satisfies the criteria to be deemed a Jones Act seaman.  Doc. 94.

## II.
### APPLICABLE LAW

**A.  Summary Judgment Standard**

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2511 (1986) (quotations omitted). This requires more than mere

---

[1] The court commends plaintiff's counsel for the professional candor in conceding this claim.  We additionally note that the briefs filed in this matter were thoroughly researched and very well written and acknowledge and thank both counsel for their courteousness.

allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir.1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 106 S.Ct. at 2511 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S.Ct. 2097, 2110 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir.2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir.2008).

In a Jones Act case the question of seaman status is a factual issue generally left to resolution by a jury. *Ardoin v. J. Ray McDermott & Co.*, 641 F.2d 277, 280 (5th Cir.1981). However, "summary judgment is appropriate when the undisputed material facts establish beyond question as a matter of law the lack of seaman status." *Hemba v. Freeport McMoran Energy Partners, Ltd.*, 811 F.2d 276, 277 (5th Cir.1987)(quotations omitted).

**B.  Jones Act Seaman Status**

To qualify as a seaman an employee must show (1) that his duties contributed to the function of a vessel or the accomplishment of its mission; and (2) that he had "a connection to a vessel in navigation (or to an identifiable group of vessels) that is substantial in terms of both its duration and its nature." *Chandris, Inc. v. Latsis*, 115 S.Ct. 2172, 2190 (1995).  The Supreme Court in *Chandris* admitted that satisfying the first prong of the test is relatively easy; the claimant need only show that he "do[es] the ship's work." *Id.*  See also *In re Endeavor Marine, Inc.*, 234

F.3d 287, 290 (5th Cir.2000). This threshold requirement is "very broad," encompassing "[a]ll who work at sea in the service of a ship." *Chandris,* at 2190.  The purpose of the second prong is to "separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea." *Id.*  The "second prong constitutes a 'status-based' standard—*i.e.*, 'it is not the employee's particular job that is determinative [of seaman status], but the employee's connection to a vessel.'" *Becker v. Tidewater, Inc.*, 335 F.3d 376, 388 (quoting *Chandris,* at 2172)(alterations in original).

In its motion QES maintains that plaintiff cannot establish the second prong of the test and his status as a Jones Act seaman must be denied.[2]  Specifically, QES argues that plaintiff cannot show that he had a permanent relationship with a particular vessel or fleet of vessels under common ownership or control.  Doc. 88, att. 1, pp. 33-47.  Instead, it argues that plaintiff's connection to any vessel was "merely 'transitory and fortuitous' in nature and randomly initiated."  *Id.* at p. 46.

The second part of the test requires that the claimant's connection to a vessel must be substantial in both its duration and its nature.  *Chandris,* at 2191.  The Supreme Court noted that as a "rule of thumb…[a] worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act."  *Id.*  Further, to satisfy the duration portion of the test, the claimant can show that he was employed on more than a single vessel.  As the Supreme Court stated, a claimant must establish the requisite connection to "a vessel or fleet of vessels, and the latter concept requires a degree of common ownership or control."  *Harbor Tug and Barge Co. v. Papai*, 117 S.Ct. 1535, 1543 (1997).

---

[2] In its reply memorandum QES also argues that plaintiff does not meet the first prong of the test.  See generally doc. 97.

# III.
## ANALYSIS

Evidence submitted in connection with the motion for summary shows that plaintiff was employed by QES as a plug and abandon helper from August 2016 until October 17, 2016, the date of his accident.  See doc. 88, att. 2, ¶ 2 and doc. 95, ¶ 2.  On the date of the accident he was on a platform in the Gulf of Mexico operated by W&T.  Doc. 1, p. 2, ¶¶ 4-5.  W&T contracted with QES to provide plug and abandon services associated with the platform/well decommissioning.  W&T had chartered the liftboat L/B TOBY EYMARD ("EYMARD") which was owned and operated by defendant Offshore Marine.  *Id.* at ¶¶ 4, 10.  The EYMARD was equipped with a crane attached to the vessel and an employee of Offshore Marine operated the crane.  *Id.* at ¶ 10.

On the date of the accident plaintiff was on the W&T platform while the Offshore Marine crane operator aboard the EYMARD was lifting pipe.  Doc. 1, pp. 5-6, ¶¶ 19-20.  As previously stated, plaintiff was injured when a section of pipe became hung up on a piece of equipment and swung and struck plaintiff in the chest causing him to fall on his leg.  *Id.* at p. 6, ¶ 21.

Deposition testimony submitted in connection with the motion for summary judgment shows that, for the three months that he worked for QES, plaintiff was assigned to work offshore for periods ranging from one week to a month and a half.  Doc. 88, att. 3, p. 15.  He always worked on the same W&T platform and only worked on two different liftboats, the EYMARD owned by Offshore Marine and another vessel, the name of which he could not recall, owned by a company named Aries.  *Id.* at p. 10.  Plaintiff never assisted with navigation of any vessel, never did any maintenance or repair work on any vessel, and never did any maintenance or repair work on the crane aboard any vessel.  *Id.* p. 11.  Plaintiff ate and slept on the vessel because the platform was being decommissioned.  *Id.* pp. 11, 37.  He estimated that his percentage of time on the platform

versus the vessel was 50% each workday. *Id.* p. 12. Plaintiff's job assignments were sporadic based on when QES had plug and abandon work and he never knew what vessel would be at the platform when he arrived in the Gulf of Mexico. *Id.* at pp. 15, 40.

Tommy Nelson the Vice President of HSE and Human Resources for QES testified that QES owns small liftboats that are not capable of working in deep water offshore and that QES does not charter any vessels. Doc. 88, att. 11, p. 7. Nelson testified that plaintiff, while working as a plug and abandon helper for QES, would have never worked on a QES vessel. *Id.* at p. 11. Plaintiff would have worked on other liftboats and those vessels would have been owned and operated by someone other than QES. *Id.* According to Nelson, QES does not charter boats and had nothing to do with the decision to retain the EYMARD for the W&T job. *Id.* at p. 12. Nelson stated that a plug and abandon worker is assigned to a project for a fixed, relatively short period of time and once the job is done, the worker has no association with the vessel unless by happenstance he is assigned another job and the customer charters the same vessel. *Id.* at p. 13.

Randy Hartdegens testified by deposition that he was a plug and abandon department supervisor for QES and aboard the EYMARD on the date of plaintiff's accident. Doc. 88, att. 12, p. 3. The QES employees were not involved in any crew operations aboard the EYAMRD such as navigation, docking, or maintenance. *Id.* at 5. He stated that he does not know in advance of any job assignment which vessel will be used as a liftboat. *Id.* at 7. When he is assigned to a job, he knows there will be a vessel out at the platform but he never knows which one it will be. *Id.* He never has an expectation to go out to the same vessel when he is called out to any job. *Id.* at 7-8.

In opposition to QES's motion plaintiff argues that he worked on a single job site and spent 50% of his working hours on only two vessels at the site when he was injured. Doc. 94, p. 10. He

contends that he satisfies the fleet requirement of *Chandris* because he worked a "total of 47 days aboard the Eymard over the course of two months, working random hitches throughout." Doc. 94. p. 11.  He urges the court to consider the "total circumstances" of his employment and suggests that since "almost his entire time at QES" he was aboard this vessel, it "comprised an…identifiable fleet of vessels subject to common ownership and control." *Id.*

In reply QES points out that, despite "commendable effort of counsel", plaintiff cannot meet either prong of the *Chandris* test.  Doc. 97, p. 2.  As to the first prong, QES argues that plaintiff never performed any of the ship's work and was not qualified to do so.  Further, although it concedes that plaintiff may have met the threshold temporal test (performing over 30% of his work on a vessel), he cannot meet the fleet requirement of the second prong.  QES maintains that there is no common ownership or control because it, plaintiff's employer, had nothing to do with the choice of which vessel was employed at the plug and abandon project.  Rather, plaintiff was sporadically and temporarily placed on vessels owned by other entities.  QES cites to *Simon v. Longnecker Properties, Inc.*, 2014 WL 2579980 (W.D. La. 6/9/2014), where plaintiff was injured while he employed as a rigger by Longnecker and assigned to several vessels owned by various companies other than Longnecker for relatively short periods of time.  The court granted summary judgment in favor of Longnecker finding that plaintiff was not a seaman under the Jones Act because he "lacked a substantial connection to a vessel." *Id.* at *3.  In that opinion the court relied on and cited the Fifth Circuit case of *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368 (5th Cir.2011) which stated:

> [A]pplication of the 30 percent test is the very means by which a substantial temporal connection is determined, regardless of whether a single vessel or a group of vessels is at issue.  And, when a group of vessels is at issue, a worker who aspires to seaman status must show that at least 30 percent of his time was spent on vessels, every one of which was under his defendant's-employer's common ownership of control.

*Id.* at 376-77.  Since none of the vessels plaintiff worked on were under QES's ownership or control, as set out in *Roberts*, QES maintains that its motion must be granted and plaintiff denied seaman status.

Plaintiff has not produced any probative evidence to support of his claim of seaman status. The evidence shows that plaintiff worked on whatever vessel happened to be at the drilling platform when he showed up to perform his plug and abandon work and that none of the vessels were under QES's common ownership or control.  Accordingly we must find that plaintiff lacks a substantial connection to a vessel or identifiable fleet of vessels and is not a Jones Act seaman. Because we find that plaintiff has failed to meet the second prong of the *Chandris* test we need not determine whether his work contributed to the function of the vessel.  Plaintiff's claims against QES under the Jones Act must be dismissed.  Additionally, as plaintiff had conceded, his claims under 33 U.S.C. § 905(b) must also fail.

## IV.
### CONCLUSION

For the reasons stated, the Motion for Summary Judgment filed by QES [doc. 88] is **GRANTED** and plaintiff's claims against QES under 33 U.S.C. § 905(b) and under the Jones Act are dismissed with prejudice.

THUS DONE AND SIGNED in Chambers this 22nd day of January, 2021.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE